# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 16-499V
Filed: October 5, 2022

* * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| JULIAN HENLEY, | * | Not For Publication |
| | * | |
| Petitioner, | * | |
| v. | * | Interim Attorneys' Fees and Costs; |
| | * | Respondent Does Not Object; |
| SECRETARY OF HEALTH | * | Protracted Litigation. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Richard Gage, Richard Gage, P.C., Cheyenne, WY,* for petitioner.
*Claudia Gangi, United States Department of Justice, Washington, DC,* for respondent.

### DECISION ON INTERIM ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

On April 22, 2016, Julian Henley ("Mr. Henley" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioner alleged that he developed pemphigus vulgarus ("PV") after receiving a Hepatitis B vaccination on April 3, 2015. *See* Petition ("Pet."), ECF No. 1. On October 26, 2021, petitioner's counsel, Mr. Gage, filed a Motion for Interim Attorneys' Fees and Costs pursuant to Section 15(e) of the Vaccine Act. ECF No. 124. After careful consideration, the undersigned has determined to **grant in part** the request for the reasons set forth below.

### I. Procedural History

This case was filed on April 22, 2016 and was assigned to the undersigned on that date. ECF No. 1, 4. Petitioner filed medical records on May 5, 2016, ECF No. 7, Pet. Ex. 1-5, and a

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.
[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

statement of completion on May 11, 2016, ECF No. 10. An initial status conference was held on June 2, 2016, after which petitioner was ordered to file his affidavit and medical records, and respondent was ordered to file a status report. ECF No. 11. Petitioner filed his affidavit on June 15, 2016, ECF No. 12, and medical records on July 7, 2016, ECF No. 13, Pet. Ex. 7-8. On August 30, 2016, respondent filed a status report, agreeing that the record was substantially complete and requesting an onset hearing and ruling before the parties evaluate the possibility of settlement. ECF No. 15. A second status conference was held on October 6, 2016, where petitioner was ordered to file a status report identifying potential hearing dates and file dental records. ECF No. 17. Petitioner filed a status report on October 21, 2016, indicating his availability for a hearing. ECF No. 18. Petitioner filed additional medical records on November 2, 2016. ECF No. 20, Pet. Ex. 9.  An onset hearing was set for November 30, 2016.

A Prehearing Status Conference was held on November 21, 2016. ECF No. 21. On November 30, 2016, a one-day onset hearing was held.  Petitioner was then ordered to file updated records, documents, and affidavits from co-worker physicians. ECF No. 24. On December 20, 2016, petitioner filed physician affidavits. ECF No. 27, Pet. Ex. 11-12. Petitioner filed additional medical records on January 19, 2017. ECF No. 31, Pet. Ex. 13. On March 9, 2017, a ruling on onset was issued. ECF No. 32. Petitioner was ordered to provide a settlement demand to respondent by June 7, 2017. *Id.* After submitting more medical records, petitioner filed a status report, confirming that a demand had been made. ECF No. 38. On December 11, 2017, respondent filed his Rule 4 (c) report, stating his position that the case was not appropriate for compensation. ECF No. 40.

Petitioner filed an expert report on April 9, 2018, ECF No. 42, Pet. Ex. 15-16, and medical literature on May 1, 2018, ECF No. 43, Pet. Ex. 17-19. Respondent filed two expert reports and accompanying medical literature on August 3, 2018. ECF Nos. 45-47, Resp. Ex. A-D. A status conference was held on September 4, 2018, following which petitioner was ordered to file a responsive expert report and advise whether he will file an additional expert report from an expert in another specialty. ECF No. 48. Petitioner filed a responsive expert report on November 21, 2018, ECF No. 50, Pet. Ex. 20, and the accompanying medical literature on January 11, 2019, ECF No. 52, Pet. Ex. 21-22. Respondent filed supplemental expert reports and medical literature on February 8 and February 11, 2019. ECF Nos. 53-54, Resp. Ex. E-F. On May 7, 2019, a status conference was held, and petitioner was ordered to file an expert report from an immunologist. ECF No. 55. Petitioner filed the requested expert report on August 5, 2019. ECF No. 58, Pet. Ex. 23. Respondent then filed supplemental expert reports on October 22, 2019, ECF No. 59, Resp. Ex. G, and on November 7, 2019, ECF No. 60, Resp. Ex. H.

Petitioner filed a status report on January 3, 2020, requesting that a hearing date be set. ECF No. 65. The Entitlement Hearing was scheduled for July 8 and 9, 2021. Over the next several months, petitioner filed a loss of earning capacity analysis and additional medical records. ECF No. 70, Pet. Ex. 25; ECF No. 78, Pet. Ex. 27. Petitioner filed a status report on December 21, 2020, stating that petitioner was in settlement negotiations with Workman's Compensation. ECF No. 82. Due to a scheduling conflict for petitioner's counsel, the Entitlement Hearing was rescheduled for July 22 and 23, 2021. ECF No. 84, 88.

The case was referred to Special Master Oler for ADR on February 12, 2021. ECF No. 90. Special Master Oler held a status conference on February 26, 2021. ECF No. 91. On May 13 and June 1, 2021, petitioner filed his pre-hearing submissions, ECF No. 93, 97, and his Workman's Compensation file on May 14, 2021, ECF No. 94, Pet. Ex. 28. Special Master Oler held an ADR Conference on June 21, 2021, after which ADR proceedings were concluded. ECF No. 99. Respondent filed a joint pre-hearing submission on June 24, 2021. ECF No. 102. Over the next month, the parties filed additional pre-hearing submissions and petitioner filed updated medical records. On July 21, 2021, petitioner filed a status report, confirming that the Workman's Compensation case had closed and explaining that expenses will be "shared between Nebraska's Workers' Comp and Medicare." ECF No. 110. The Entitlement Hearing was held virtually on July 22, 2021. Respondent filed post-hearing exhibits from his experts on August 1 and 2, 2021. ECF Nos. 112-113, Resp. Ex. I-O. Petitioner filed income documentation on October 18, 2021, ECF No. 120, Pet. Ex. 39-42, and medical literature on October 21, 2022, ECF No. 122, Pet. Ex. 43-48. The parties engaged in settlement negotiations, which are ongoing, at the suggestion of the undersigned following the hearing in this matter.

On October 26, 2021, petitioner filed a Motion for Attorneys' Fees and Costs ("Motion for Fees") requesting a total of **$111,952.89**[3], representing **$73,446.15** in attorneys' fees and **$38,562.40** in attorneys' costs. Motion for Fees, ECF No. 124. Respondent filed his response on October 27, 2021, stating no objection and submitting that all the statutory requirements have been met. ECF No. 125.

This matter is now ripe for decision.

## II. Legal Framework

The Vaccine Act permits an award of reasonable attorneys' fees and other costs. § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is automatically entitled to reasonable attorneys' fees. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request sua sponte, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201,

---

[3] After calculating the request made by petitioner's counsel and double checking the math, counsel appears to have shortchanged himself. The amount requested totals $112,008.55, not the requested $111,952.89. Therefore, all calculation will be done using $112,008.55.

209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

### A.    Availability of Interim Fees

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F.3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. This case has been pending for over six years, and the Entitlement Hearing was held over a year ago. This ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g., Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees). Further, respondent has raised no objection to the motion and submitted that petitioner has satisfied the statutory requirements. ECF No. 125.

Moreover, petitioner has expended significant time and costs in litigating this matter. A decision in this case, though forthcoming, requires additional time, given the current case load. In sum, the circumstances of this case warrant an award of interim fees and costs, so as not to impose economic hardship on petitioner.

### B.    Reasonable Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for

4

attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Mr. Gage has nearly thirty-two years of legal experience since his admission to the Wyoming State Bar in 1990. Other special masters have awarded Mr. Gage non-forum rates, given that the substantial majority of the work on his cases is performed in Wyoming. *See Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701 (Fed. Cl. Spec. Mstr. May 20, 2016). Here, Mr. Gage submitted hourly rates for himself of $300 for 2015, $311 for 2016, $318 for 2017, $326 for 2018, $338 for 2019, $350 for 2020, and $362 for 2021. Motion for Fees at 43-56. The submitted rates have been upheld by other special masters. *See Ferguson v. Sec'y of Health & Human Servs.*, No. 17-1737V, 2022 WL 1467655 (Fed. Cl. Spec. Mstr. Apr. 12, 2022) (awarding the requested fees from 2017-2021); *Roscoe v. Sec'y of Health & Human Servs.*, No. 11-206V, 2021 WL 3746783 (Fed. Cl. Spec. Mstr. July 30, 2021) (awarding the requested fees from 2018-2021); *Kreizenbeck v. Sec'y of Health & Human Servs.*, No. 08-209V, 2020 WL 5909091 (Fed. Cl. Spec. Mstr. Sept. 15, 2020) (awarding the requested fees from 2015-2020).

Mr. Gage has also requested rates for attorney Kristen Blume of $250 for 2018 and $355 for 2021. Motion for Fees at 58. The submitted rates for 2018 and 2021 have been upheld by other special masters. *See Ferguson*, 2022 WL 1467655, at *2 (awarding the requested rate for 2021); *Roscoe*, 2021 WL 3746783, at *2 (awarding the requested rate 2021); *Williams v. Sec'y of Health & Human Servs.*, No. 15-1224V, 2019 WL 7482148, at *2 (Fed. Cl. Spec. Mstr. Dec. 2, 2019) (awarding $251 for 2018).

Finally, Mr. Gage requested rates for his paralegals of $112 for 2015, $120 for 2016 through 2020 and $130 for 2021. Motion for Fees at 60-74. These rates have been upheld by other special masters. *See Williams*, 2019 WL 7482148, at *2 (awarding the requested rates from 2015-2019); *Roscoe*, 2021 WL 3746783, at *2 (awarding the requested rates for 2018-2021).

Based on the foregoing, I find the hourly rates billed by Mr. Gage to be reasonable.

## C.    Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are

---

[4] The 2015-2022 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.,* No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

"excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the hours billed by Mr. Gage and his firm, I find that the hours spent on this matter are reasonable.

## D.   Reasonable Costs

Petitioner also requested $7,800.39 in costs for life care planner Re-Entry Rehabilitation Services, which billed at a rate of $185 or $225 for 45 hours of work. Motion for Fees at 89. This is consistent with the rate that has been awarded in other rulings. *See Desai v. Sec'y of Health & Human Servs.*, No. 14-811V, 2018 WL 6819551 (Fed. Cl. Spec. Mstr. Nov. 27, 2018). Accordingly, the undersigned finds the billing rate reasonable. However, the life care planner in this case made several vague entries for research, such as "life care plan research re: costs" or "labor market research." Motion for Fees at 87-88. The life care planner also billed $400.00 for a "file set up fee" with no additional information. Motion for Fees at 89. Additionally, the life care planner billed their normal rate of $225 per hour for travel time on July 28, 2017. Motion for Fees at 87. Because they billed their working hours and travel time in the same entry, it is impossible to assess how much of the 5.75 hours was spent traveling. All three of these billing habits have been pointed out by other special masters, who reduced the requested fee accordingly. *See Desai*, 2018 WL 6819551, at *8-9 (reducing the requested amount for vague research entries and billing the normal rate for travel time); *Ferguson*, 2022 WL 1467655, at *2 (reducing the requested amount due to vagueness of "file set up fee"). I will do the same here. Thus, I will deduct 5% from the Life Care Planner's costs as a final warning to counsel that, like attorney and paralegal time, expert time must be appropriately documented to be compensable. This results in a **reduction of $390.02.**

Additionally, petitioner requested $6,200.00, which includes the $1,000.00 retainer already paid, for work performed by Dr. Mark McNulty in calculating loss earnings due to work disability for petitioner. Motion for Fees at 94, 98. As noted in prior rulings, Dr. McNulty is an economist and statistician and holds a Ph.D. in both subjects. *Ferguson*, 2022 WL 1467655, at *3. He provided an expert report at a rate of $400.00 per hour for 13 hours of work on this case. Motion for Fees at 98. Dr. McNulty has been previously compensated at this rate for similar work provided. *See Hodkinson v. Sec'y of Health & Human Servs*., No. 14-660V, 2021 WL 5711949, at *4 (Fed. Cl. Spec. Mstr. Nov. 2, 2021). The hours expended on this matter are also reasonable. Thus, the undersigned compensates Dr. McNulty in full.

Petitioner requested $5,900.00 for work performed by medical expert Dr. David Norris. Motion for Fees at 90, 99. Dr. Norris billed at a rate of $400.00 per hour and spent a total of 14.75 hours on this matter, including time spent on two expert reports and testifying at hearing. *Id.*; ECF No. 42, Pet. Ex. 15; ECF No. 50, Pet. Ex. 20; ECF No. 104, Pet. Witness List. This rate is consistent with what he has previously been awarded and the hours expended are also reasonable. *See Hitt v. Sec'y of Health & Human Servs*., No. 15-1283V, 2022 WL 3591141, at *3 (Fed. Cl. Spec. Mstr. July 27, 2022). Thus, the undersigned compensates Dr. Norris in full.

Petitioner also requested $15,120.00 for work performed by medical expert Dr. Vera Byers. Motion for Fees at 100-01. Dr. Byers testified at hearing and submitted one expert report. ECF No. 58, Pet. Ex. 23. She billed at a rate of $400.00 per hour for 25.3 hours of work and charged a flat fee of $5,000.00 for hearing. Motion for Fees at 101. The billing rate of $400.00 per hour is reasonable and consistent with what Dr. Byers has been awarded in other rulings. *Riley on behalf of E.R. v. Sec'y of Health & Human Servs*., No. 15-104V, 2021 WL 5177434, at *3 (Fed. Cl. Spec. Mstr. Oct. 13, 2021). However, flat fees are not regularly submitted or awarded in Vaccine cases. The Entitlement Hearing in this matter lasted 6.83 hours. At Dr. Byers' normal rate of $400.00 per hour, Dr. Byers would have been entitled to $2,732.00 for the hearing. Thus, this results in a **reduction of $2,268.00**. Further, Dr. Byers' overall hours in this matter were particularly high, having only issued a seven-page expert report, the first two pages being medical history and only two and a half pages of analysis. *See* ECF No. 58, Pet. Ex. 23. Dr. Byers cited only one additional article and otherwise relied on the literature and opinions already submitted by Dr. Norris. *See id.* Dr. Byers and Dr. Norris read the same set of medical records, wrote reports of similar length—though Dr. Byers' report was shorter, and appeared at the same entitlement hearing. Given the similarities in tasks, and Dr. Byers' deferral to Dr. Norris' opinions, one would expect that the time spent by Dr. Byers would be relatively similar to or less than that spent by Dr. Norris. Dr. Byers has not justified why the number of hours she spent on this case so greatly exceed that of Dr. Norris. Therefore, I am reducing Dr. Byers' time spent by 25%, which results in a new total of 18.975 hours spent. This results in a **reduction of $2,530.00.** Dr. Byers will be compensated $10,322.00, reflecting the new total for hours spent and the precise time spent at hearing.

Finally, petitioner requested $3,542.01 to cover other miscellaneous expenses, including copies, costs related to medical records quests, and For the Record expenses. Motion for Fees at 76-78. The undersigned finds these costs reasonable and awards them in full.

## IV. Total Award Summary

       Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED IN PART**. Accordingly, I award **$106,820.53,** representing **$73,446.15** in attorneys' fees and **$33,374.38** in attorneys' costs in the form of a check payable jointly to **petitioner Julian Henley and petitioner's counsel, Richard Gage of Richard Gage, P.C. The clerk shall enter judgment accordingly.**[5]

       **IT IS SO ORDERED.**

**<u>s/Mindy Michaels Roth</u>**
Mindy Michaels Roth
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.